Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9416 | **DATE** | 3/2/2004 |
| **CASE TITLE** | UNITED STATES ex rel. WILLIAM CARINI vs. MOTE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The petition for a writ of *habeas corpus* [1-1] is denied. ENTER MEMORANDUM OPINION AND ORDER.

/s/ Suzanne B. Conlon

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 03 2004 date docketed | |
| | Docketing to mail notices. | | | 13 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/2/2004 date mailed notice | |
| CB courtroom deputy's initials | | Date/time received in central Clerk's Office | PW mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. ) <br> WILLIAM CARINI, #N51235, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> STEPHEN MOTE, Warden, ) <br> ) <br> Respondent. ) | No. 03 C 9416 <br><br> Suzanne B. Conlon, Judge |

## **MEMORANDUM OPINION AND ORDER**

After a bench trial in 1993, William Carini was convicted in state court of three counts of aggravated sexual assault. He was sentenced to 20 years for one offense, to be served consecutively to concurrent six year terms for the other two offenses. After multiple state appellate and collateral proceedings, Carini petitions for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.

## **PROCEDURAL HISTORY**

The Illinois Appellate Court affirmed Carini's conviction and sentence on direct appeal. *People v. Carini*, 254 Ill. App.3d 1, 626 N.E.2d 297, (Ill. App. Ct. 1993). Carini did not seek leave to appeal to the Illinois Supreme Court. In 1994, he sought post-conviction relief, basing his claim in large part on ineffective assistance of trial counsel. Carini filed second and third amended petitions in 1995. The trial court denied his petition on April 17, 1998. The Illinois Appellate Court affirmed. Unpublished Rule 23 Order, No. 2-98-0593 (Ill. App. Ct., 2nd Dist., Jan. 26, 2000). The Illinois Supreme Court denied his petition for leave to appeal. Order, No. 89114, June 22, 2000. Carini commenced a second collateral attack on his conviction on July 11, 2000. This combined

1



petition for post-conviction relief argued his conviction was based on perjured testimony. After an evidentiary hearing, the trial court dismissed the petition on December 1, 2000.[1] The Illinois Appellate Court affirmed. Rule 23 Order, No. 2-01-0203 (Ill. App. Ct., 2nd Dist., April 24, 2002). The Illinois Supreme Court denied leave to appeal. Order, No. 93927, Oct. 2, 2002. Carini filed his third petition for post-conviction relief on July 11, 2000. The trial court dismissed the petition. Order, Dec. 13, 2001, Gen. No. 91 CF 2233. The Illinois Appellate Court affirmed. Rule 23 Order, No. 2-02-0146 (Ill. App. Ct., 2nd Dist., July 31, 2003). The petition for leave to appeal was denied on December 3, 2003. Order, No. 96916, Dec. 3, 2003.

Carini petitions for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. The petition alleges seventeen grounds for relief: (1) the prosecution failed to prove guilt beyond reasonable doubt; (2) the prosecution failed to disclose a suspect list compiled by the police; (3) trial counsel was ineffective because he failed to challenge the prosecution's non-disclosure; (4) denial of due process because the prosecution knowingly withheld information that the chief witness/victim had pending criminal charges at the time she testified; (5) trial counsel was ineffective because he failed to file a pretrial motion to require the prosecution to test evidentiary items for DNA evidence that may have demonstrated Carini's innocence; (6) trial counsel was ineffective for failing to introduce expert testimony regarding the effects alcohol has on a witness' perception and memory; (7) trial counsel was ineffective for failing to file a pretrial motion or trial objection to suppress allegedly suggestive photo and in-person lineups; (8) appellate counsel was ineffective for failing to raise trial counsel's failure to object to prosecution witness' use of statistical evidence; (9) appellate counsel

---

[1] There is no copy of the trial court's order dismissing the petition on file. *See* Rule 23 Order, No. 2-01-0203 (Ill. App. Ct., 2nd Dist., April 24, 2002).

2

was ineffective because he failed to raise trial counsel's failure to file a motion to require the state to test evidence for DNA, he failed to raise trial counsel's failure to introduce expert testimony about the effects alcohol has on witness' perceptions, and appellate counsel failed to raise the suggestiveness of the photo and in-person lineups[2]; (10) denial of due process because two prosecution witnesses perjured themselves; (11) denial of due process because the prosecution intimidated the victim to retract her recantation of her trial testimony; (12) denial of effective assistance of counsel because his attorney failed to include in post-conviction pleadings information obtained in a June 2000 interview with the victim that established potential *Brady* violations; (13) denial of due process because the state continued to commit discovery violations in post-trial proceedings, including the failure to disclose the victim's pending criminal charges; (14) denial of due process because the judge presiding over the second post-conviction petition was biased; (15) the prosecution has continuously concealed information that Carini requested under the Freedom of Information Act ("FOIA"); (16) all claims raised in his petition for leave to appeal to the Illinois Supreme Court; (17) all claims previously raised in state proceedings; (18) any delinquencies or procedural defaults should be excused because his counsel was ineffective and his imprisonment made it difficult to appeal. The state contends that most grounds are subject to procedural default and that the others should be denied on the merits.

## BACKGROUND

Factual findings of a state trial or appellate court are presumed correct in a federal *habeas* proceeding unless the petitioner rebuts the presumption with clear and convincing evidence. 28

---

[2] Because claim 9 overlaps claims 4 through 7, it will be discussed in conjunction with those claims.

3

U.S.C. § 2254(e)(1). The record does not reveal any evidence contrary to the findings of the state courts. Indeed, Carini's petition does not include a statement of facts. Accordingly, the court adopts the Illinois Appellate Court's summation of the case. *Carini*, 254 Ill. App.3d at 3-9, 626 N.E.2d at 298-302.

On June 3, 1991, Joann Schulz, a female resident of Valparaiso, Indiana was attacked while sleeping in her car alongside I-94 south in Illinois. She was on her way home after spending June 2nd partying, drinking and boating with her brother in Tichigan, Wisconsin. She left her brother's house in Tichigan at about 1:30 a.m. on June 3rd. After driving for about an hour, Schulz decided to stop and rest her eyes. She pulled off the highway and onto the shoulder somewhere near Grand Avenue in Lake County, Illinois. Carini has continually asserted Schulz felt tired because she was drunk. Schulz did not recall when she pulled over, but estimated that it was about 3:00 or 3:30 a.m. She left the doors unlocked and the windows rolled down because it was hot. She reclined her seat and fell asleep.

Schulz was startled awake by a knife pressed against her throat. A white man was kneeling over her from the passenger seat. She testified at trial that the man had a "square jaw, nappy hair, and a very prominent scar on his upper lip." *Carini*, 254 Ill. App.3d at 5, 626 N.E.2d at 300. He ordered her to fully recline her seat. He then proceeded to have vaginal intercourse with her for about five minutes. The man then grabbed Schulz's hair and forced her face down into the back seat. There, he had anal intercourse with her for five to ten minutes, despite her pleas to stop. The man finally stopped, but he grabbed her hair and forced her to perform oral sex on him while he sat down in the front passenger seat. Schulz bit down on the attacker's penis. The man cried out in pain and tumbled from the car. Schulz sped away, driving into Indiana without stopping. Once home, Schulz

showered and noticed blood between her legs. She exited the shower immediately and called the hospital. The hospital instructed her to refrain from showering and to bring her clothing with her to the emergency room. At the hospital, a doctor examined her and took samples. Schulz also spoke with police officers.

Later on that day, Schulz met with Illinois State Police Officer James Gentilcore at her home in Valparaiso. Gentilcore was the lead investigator and testified at trial. At this initial meeting, Gentilcore obtained a description of Schulz's attacker as a "white male in his late twenties to early thirties who weighed approximately 175 to 180 pounds, was 5 feet 7 inches tall, had dark fuzzy cut hair, was clean shaven, and had a one-quarter-inch scar above his right lip." *Id.* at 3, 626 N.E.2d at 298. Gentilcore submitted this description to an analyst. Using this information, the analyst gave Gentilcore a computer generated list of potential suspects. The list contained over 100 names of individuals who lived in the general area of the attack and matched the description provided by Schulz.

At trial, Gentilcore testified that he selected Carini from the list because he was the only person who resided near the site of the attack. The other names on the list lived in counties further west or south of the attack site. Gentilcore obtained a photograph of Carini from the Wheeling, Illinois police department and returned to Valparaiso on July 17, 1991 – about two weeks after the attack.

Gentilcore met Schulz at the automobile dealership where she worked. On a desk, Gentilcore displayed six black and white photographs of individuals who may or may not have been her attacker. Each person in the photograph lineup had characteristics similar to those of the attacker described by Schulz. After reviewing at the photographs for about five minutes, Schulz tentatively

5

identified Carini. She explained that the hair was exact and the chin was perfect, but that she did not like the angle of the chin in the photograph. Gentilcore asked if she would like to see a color photograph of anyone in the lineup. Schulz requested to examine a color photograph of Carini. Again, she tentatively identified Carini as her attacker, but informed Gentilcore that she could not be absolutely certain because of the angle at which the photograph was taken.

A few weeks later, on September 4, 1991, Gentilcore visited Carini at his home. He noticed Carini had a very light mustache and a scar above his left lip that was about one-quarter-inch long. Gentilcore testified that after his visit with Carini, he called Schulz and asked her if she was sure about the scar. She responded affirmatively and said that it was on the right side of his face. Gentilcore asked if she meant her right, or the perpetrator's right. According to Gentilcore, Schulz responded by apologizing and saying that she should have told him earlier that she meant her right side as she looked at him, the perpetrator's left side.

On this information, Gentilcore asked Schulz to come to the police station to view an in-person line-up. Schulz came in on October 17, 1991. Gentilcore told her that the individuals in the line-up may or may not include the person who attacked her. The six participants entered the viewing room single-file. Gentilcore testified that when Carini entered, Schulz stepped back from the viewing window and appeared emotionally upset. She trained her eyes on Carini. After ten to fifteen minutes, Gentilcore attempted to comfort Schulz. He asked her if she could identify an individual and told her it was okay if she could not. Schulz identified Carini. At trial, Gentilcore made an in-court identification of Carini as the man Schulz selected during the photographic and in-person lineups. Schulz also identified Carini as her attacker at trial, noting that Carini had a

mustache at trial that he did not have when he attacked her. Carini's family members testified that he was sleeping at their home at the time the alleged attack occurred.

## DISCUSSION

Before reaching the merits of Carini's petition, the court must determine whether his claims are procedurally barred. *Spreitzer v. Schomig,* 219 F.3d 639, 644 (7th Cir. 2000). Under § 2254, a petitioner must fairly present his federal claims to the state courts before he is eligible for a writ of *habeas corpus. O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999); *Duncan v. Henry,* 513 U.S. 364, 365 (1995). Beyond the fair presentment requirement, a federal court is also precluded from reaching the merits of a *habeas* petition when the petitioner's claims were dismissed in state court pursuant to a state procedural bar. *Jenkins v. Nelson,* 157 F.3d 485, 491-92 (7th Cir. 1998), citing *Wainwright v. Sykes,* 433 U.S. 72, 90-91 (1977). The doctrine of procedural default bars federal *habeas* review if the underlying state court decision rests on a state law ground that is both "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 591 U.S. 722, 730 (1991). The state court decision is independent and adequate only if the judgment clearly and expressly rests on an underlying state procedural bar. *Jenkins,* 157 F.3d at 491, citing *Harris v. Reed,* 489 U.S. 255, 263 (1989). The state contends that most of Carini's seventeen grounds for relief are procedurally barred.

### Claim 1

Carini's first claim for relief is a due process argument. He contends he was not proven guilty beyond a reasonable doubt in his original 1991 bench trial. He argues that Schulz was under the influence of alcohol at the time of the attack and therefore was incapable of positively identifying her attacker. He asserts the reliability of his conviction is further undermined by inconclusive

physical evidence found in Schulz's car. An investigation of the car uncovered fingerprints and pubic hair, but neither could be matched to Carini. The state does not argue the merits of Carini's claim, but responds that the claim is procedurally barred because Carini failed to present the argument before the Illinois Supreme Court on direct appeal. Carini unsuccessfully appealed his conviction and sentence to the Illinois Appellate Court. *Carini*, 254 Ill. App.3d 1, 626 N.E.2d 297. However, he failed to petition for leave to appeal with the Illinois Supreme Court. Because Carini failed to invoke "one complete round of the State's established appellate review process," his claim is procedurally defaulted. *Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003), citing *Boerckel*, 526 U.S. at 845.

**Claim 2**

Carini's second claim for relief was raised on direct appeal. He contends the state failed to comply with its discovery obligations because it did not disclose the 100 person suspect list Gentilcore used at the beginning of his investigation. The state does not dispute the merits of Carini's argument, but contends the issue is procedurally defaulted. On direct appeal, the Illinois Appellate Court declined to address Carini's claim because both a trial objection and a written post-trial motion are necessary to preserve a trial court error for appeal. *Carini*, 254 Ill. App.3d at 13, 626 N.E.2d at 305. By failing to object or move for a continuance at trial, Carini waived his right to appeal. *Id.*; *People v. Coleman*, 158 Ill.2d 319, 333-338, 633 N.E.2d 654, 662-64 (1994), citing *People v. Enoch*, 122 Ill.2d 176, 522 N.E.2d 1124 (1988). Waiver is an independent and adequate state procedural ground for dismissal. *Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003) (failure to raise objection in post-trial motion resulted in procedural default precluding *habeas* review). Accordingly, Carini's second claim must be dismissed.

**Claims 3 and 8**

Carini asserts his trial counsel was ineffective because he failed to challenge the prosecution's non-disclosure of material information (Claim 3). He asserts appellate counsel was ineffective for not raising this argument on appeal (Claim 8). Carini first raised both claims in his original post-conviction petition. *See* Resp.'s Ex. C at ¶ 4. There, he argued that trial counsel failed to demand that the prosecution turn over the statistical report Gentilcore initially used to narrow the suspect list down to Carini. *Id.* Carini argued that his appellate counsel was ineffective for not raising trial counsel's failure to demand the state comply with its discovery obligations. *Id.* The gist of these claims changed on Carini's subsequent appeal to the Illinois Appellate Court. In appealing the trial court's denial of post-conviction relief, Carini premised his ineffective assistance of counsel claim against trial counsel on failure to object to the admissibility of Gentilcore's statistical report. Resp. Ex. H at pp. 17-18. This shift in strategy also transformed Carini's claim against his appellate attorney, because it relied on a different factual predicate. Although Carini presented his current claims to the state trial court, by changing the basis for his claims in his appellate brief, he failed to fairly present the issues to the Illinois Appellate Court. *Howard v. O'Sullivan,* 185 F.3d 721, 725 (7th Cir. 1999). Accordingly, claims 3 and 8 are procedurally defaulted.

**Claims 4 and 9**

Carini's fourth ground for relief is that he was denied due process because the prosecution knowingly withheld impeachment evidence against Schulz. Claim nine includes identical allegations aimed at Carini's appellate counsel. Carini was represented by the same attorney at trial and on direct appeal. The Illinois Appellate Court treated the claims together. This court will do the same.

9

Specifically, Carini claims that despite a request by trial counsel, the prosecution failed to provide Carini with evidence that Schulz was subject to pending criminal charges at the time she testified. Carini raised this argument in his third petition for post-conviction relief, and it is a valid constitutional claim. A *Brady* violation occurs only if the evidence is material to guilt or punishment; undisclosed impeachment evidence is material if there is a reasonable probability the outcome of the trial proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985). Nevertheless, Carini's claim is beyond the scope of *habeas* review because he failed to pursue it in his subsequent appeal to the Illinois Appellate Court. *See* Resp. Ex. S. Allegations against appellate counsel were completely dropped from his appeal brief. His cursory citation to *Brady v. Maryland* and his one sentence argument do not constitute full and fair presentment of his claim against trial counsel. *Verdin v. O'Leary*, 972 F.2d 1467, 1473-74 (7th Cir.1992). Casual reference to a Supreme Court case without explanation of the claim's underlying facts is insufficient to preserve a claim for *habeas* review. *Id.* Inadequate presentation of the claim prevented the Illinois Appellate Court from even considering the claim. *See* Rule 23 Order, No. 2-02-0146 (Ill. App. Ct., 2nd Dist. July 31, 2003). Carini's failure to exhaust the state appellate process by fully and fairly presenting his claims is fatal. *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999).

**Claims 5 and 9**

Claims 5 and 9 are essentially the same. Claim five alleges that trial counsel was ineffective because he failed to file a motion to require the state to test evidentiary items for DNA evidence. Claim nine alleges that appellate counsel was ineffective for failing to challenge trial counsel's failure to file the pretrial motion. Carini's counsel at trial and on direct appeal were the same person. The Illinois Appellate Court denied Carini's claim on the merits, finding that Carini was not

prejudiced by counsel's failure to request DNA evidence because he was able to secure post-conviction DNA testing pursuant to a motion filed under 725 ILCS 5/116-3(a). Unpublished Rule 23 Order, No. 2-98-0593, Jan. 26, 2000 at 8-10. Under *Strickland v. Washington*, an attorney's performance is constitutionally defective if it falls below an objective standard of reasonableness, and there is a reasonable probability "but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 671, 688, 104 S.Ct. 2052 (1984). Carini must demonstrate the Illinois Supreme Court applied *Strickland* in an objectively unreasonable manner. 28 U.S.C. § 2254(d); *see also Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997) (state court application of *Strickland* accorded deference under § 2254(d)(1)). This he has failed to do. Carini does not argue his counsel's failure to request DNA testing at trial led to his conviction, nor has he argued that his chance to obtain DNA testing was foreclosed by his counsel's failure. *See* § 2254(c). Absent a showing of prejudice, claims that his trial and appellate counsel were ineffective for failing to pursue a DNA inquiry into the evidence must fail.

**Claims 6 and 9**

Carini claims his trial counsel was ineffective because he failed to present expert testimony concerning the effect alcohol and prescription drugs could have had on Schulz's ability to identify her attacker. He asserts appellate counsel was ineffective for failing to raise this claim. Carini was represented by the same attorney during trial and on direct appeal. The Illinois Appellate Court dismissed both claims because Carini failed to comply with the procedural requirements of the

Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-2.[3] Unpublished Rule 23 Order, No. 2-98-0593, Jan. 26, 2000 at 11-12. This is an independent and adequate state ground that bars federal *habeas* review. *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002).

**Claims 7 and 9**

Carini alleges he was denied effective assistance of counsel when his trial counsel failed to move to suppress the allegedly suggestive photo and in-person lineups. He also asserts his appellate counsel was ineffective because he failed to attack this error on direct appeal. Both claims saw first light in this *habeas* petition. The closest Carini came to pleading these assistance of counsel claims was in his first post-conviction petition, wherein he alleged that he was denied due process by the suggestive line-up. Resp. Ex. C. at ¶ 5. But this is not the same argument. Carini's failure to submit these ineffective assistance of counsel claims to a full round of state appellate review means they are procedurally defaulted. *Boerckel*, 526 U.S. at 845.

**Claim 10**

Carini argues his conviction is based on the perjured testimony of Schulz and Gentilcore. This claim was initially raised in his second petition for post-conviction relief. Both claims were denied, and Carini failed to include his challenge to Gentilcore's testimony in his subsequent appeal. Accordingly, that claim is procedurally defaulted.

Turning to Schulz's testimony, the Illinois Appellate Court dismissed this claim on the merits. Carini had supported his claim that Schulz perjured herself with an affidavit by Schulz; she

---

[3] Carini's appeal was insufficient because he failed to attach affidavits and other evidence substantiating his attack on Schulz's testimony. The gist of this claim is that counsel failed to adequately refute Schulz's ability to identify her attacker. Thus, Carini had to discredit Schulz's testimony in order to establish the prejudice prong of the *Strickland* test. His failure to properly introduce evidence undermining Schulz's testimony meant that he could not establish prejudice.

attested she was no longer certain Carini was her attacker and that her identification of Carini at trial was influenced by Gentilcore. Rule 23 Order, No. 2-01-0203 at p. 2 (Ill. App. Ct., 2nd Dist., April 24, 2002); Pet. Ex. 2. The state responded by submitting a later affidavit by Schulz in which she explained and refuted the contents of the affidavit she gave to Carini; she reaffirmed her trial testimony. *Id.* at 2-4. In considering both affidavits, the trial court found that Schulz had been "unduly pressured and frightened into recanting her identification of [Carini] as the perpetrator of the aggravated sexual assault." *Id.* As the appellate court noted, the trial court was the finder of fact and was in the best position to determine the credibility of the affidavits. *Id.* On the basis of these factual findings, the appellate court dismissed Carini's petition on the merits, affirming that Schulz's trial testimony was not perjured.

Even if Schulz's testimony were perjured, Carini must demonstrate that the prosecution knew or should have known about the perjury and that the perjured testimony impacted the verdict. *Harding v. Walls*, 300 F.3d 824, 828 (7th Cir. 2002). In addition, Carini bears the burden of demonstrating the state court's decision was an objectively unreasonable application of the law or was premised on an unreasonable reading of the facts. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). The state courts found that Schulz had not perjured herself. Carini has submitted no evidence supporting his claim that Schulz perjured herself at trial and recanted the post-conviction affidavit because she feared criminal charges. And the state court findings are supported by Schulz's second affidavit and the credibility determinations of the trial judge. Carini fails to meet his burden of demonstrating that the state court's finding that Schulz's testimony was not perjured was premised on an unreasonable application of the law or facts. Accordingly, claim 10 is denied on the merits.

**Claim 11**

Claim 11 alleges that Schulz recanted her June 2000 affidavit because the prosecution intimidated her. The state correctly points out that this claim was not properly raised in state court and is thus procedurally defaulted. *See* Rule 23 Order, No. 2-01-0203 at p. 3-5 (Ill. App. Ct., 2nd Dist., April 24, 2002); Resp. Ex. M (Carini's Brief on Post-Conviction Appeal); *Rodriguez*, 63 F.3d at 555. Although Carini argued that Schulz recanted her affidavit because she feared prosecution, he did not argue that this was prosecutorial misconduct that entitled him to relief. To the extent Carini made this argument in state court, it was merely to buttress his contention that Schulz perjured herself. This fails the fair presentation requirement. *Howard*, 185 F.3d at 725. Moreover, both the trial judge and the Illinois Appellate Court found these accusations factually incredible. *Id.* Carini has submitted absolutely no evidence suggesting these factual findings were unreasonable. 28 U.S.C. § 2254(e)(1). Accordingly, the claim is denied.

**Claim 12**

Carini claims he was denied effective assistance of counsel during post-conviction proceedings because his attorney did not effectively prosecute his claim that Schulz committed perjury. However, Carini has no constitutional right to post-conviction counsel. *Howard*, 185 F.3d at 725, citing *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993 (1987). The AEDPA provides that, "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Claim 12 presents no basis for *habeas* relief.

14

**Claim 13**

Carini alleges he was denied due process because the state withheld discovery of Schulz's criminal record throughout post-conviction proceedings. This claim is a rehashed version of claim 4, which alleges the prosecution improperly withheld *Brady* material at trial. This version of the claim was first asserted in his third petition for post-conviction relief. Resp. Ex. Q at ¶¶ 17-19. The trial court dismissed his petition as frivolous. Order, Dec. 13, 2001, Gen. No. 91 CF 2233. The basis for this claim changed in his appeal to the Illinois Appellate Court. There, Carini made cursory reference to the prosecution's alleged failure to comply with pretrial discovery. Carini did not mention post-trial *Brady* violations. This shifting basis is fatal. *Howard*, 185 F.3d at 725. Moreover, Carini's perfunctory mention of *Brady* does not outline a constitutional claim. Carini's failure to fully and fairly present his claim for state appellate review means the claim is procedurally defaulted.

**Claim 14**

Carini alleges the judge presiding over his second post-conviction petition for relief was biased. This claim was raised in his third post-conviction petition, but was abandoned in his appeal to the Illinois Appellate Court. Accordingly, the claim is procedurally defaulted. *Howard*, 185 F.3d at 725.

**Claim 15**

Carini claims the state improperly denied his requests under the Freedom of Information Act ("FOIA"). Essentially, he contends that the state has refused to release information about other suspects on the 100-person list Gentilcore used during his investigation. The state correctly points out that the alleged FOIA violations are immaterial to Carini's confinement and are therefore beyond

15

the scope of *habeas* review. *See Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997); *Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003) (violations which had no effect on the outcome of the petitioner's trial do not justify a writ of *habeas corpus*). Even if the FOIA violations established a constitutional claim, the claim is procedurally defaulted because Carini failed to assert the argument in his subsequent appeal to the Illinois Appellate Court.

**Claims 16 and 18**

Claims 16 and 18 contain no factual or legal allegations. They merely attempt to incorporate the grounds for relief alleged in his most recent petition for leave to appeal to the Illinois Supreme Court, and "all prior claims for relief of record in prior pleadings filed before the Illinois courts." This style of pleading is inadequate. Rule 2(c) of the Rules Governing Section 2254 Cases requires a *habeas* petitioner to "*specify* all the grounds for relief which are available" and "set forth in summary form the facts supporting each of the grounds thus specified." *See United States ex rel. Johnson v. Tally*, 47 F. Supp.2d 943, 953-54 (N.D. Ill. 1999); *United States ex rel. Beyah v. Gramley*, No 98 C 1865, 1998 WL 867411, at *11 (N.D. Ill. Dec. 3, 1998). Notice style pleading is insufficient in the context of § 2254 *habeas* petition. Because Carini did not sufficiently state facts that would enable this court to determine from the face of the petition alone whether claims 16 and 18 merit further habeas corpus review, the claims must be dismissed. *United States ex rel. Smith v. Page*, No. 96 C 8558, 1999 WL 977066, *3 (N.D. Ill. Oct. 22, 1999).

**Cause and Prejudice (Claim 17)**

Procedural default prevents the court from reaching the merits of Carini's claims unless he is able to "'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice.'" *Anderson v. Cowan*, 227 F.3d 893, 899-900 (7th Cir. 2000), *quoting Coleman*, 501 U.S. at 750. Carini alleges multiple causes for procedural default of his claims, including ineffective assistance of counsel, his naivete, and his imprisonment. Carini's second and third arguments are insufficient to excuse his failure to properly pursue his claims through the state appellate process; most prisoners are not attorneys, and by definition every *habeas* petitioner is subject to the duress of imprisonment. *See Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir. 2003) (petitioner's *pro se* status does not excuse procedural default); *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639 (1986) (external factor such as official interference by prison officers constitutes cause). Although Carini has argued that his counsel was ineffective, throughout his appeals he has styled this claim as an independent constitutional basis for relief, not as cause for procedural default. *See Lee v. Davis*, 328 F.3d 896, 900-3 (7th Cir. 2003). Because he has failed to raise his counsel's incompetence as a defense to procedural default in previous state proceedings, he may not raise it for the first time in his federal *habeas* petition. *Id.* Accordingly, Carini has failed to demonstrate cause or prejudice for his procedural defaults.

## CONCLUSION

Claims 1 through 11, 13, 14, and 15 are procedurally defaulted. Carini has failed to show claims 10, 12, 16, and 18 rest on unreasonable applications of federal law or present cognizable constitutional claims for relief. Accordingly, those claims are denied on the merits. The petition for a writ of *habeas corpus* is denied.

March 2, 2004

ENTER:

Suzanne B. Conlon
United States District Judge