Dec 29th 2016

TO: U.S. DC. U.S. Court House Atten: Deputy Clerk, E. Wall
219 South Dearborn St Chgo IL 60604

FR. William Carini # N51235
Pontiac Corr Ctr Box 99 Pontiac IL 61764

In re No. 03 CV 9416 (Sue Conlon Judge presided)
Request No. 0616-73 (Copies) June 24 2016

FILED
JAN 03 2017
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Dear Clerk Wall,
or whom concerns

I hope you can please excuse my long delay in being able to follow-up on my prior inquirey concerning request No. 0616-73 for copies of all filings in that action.

I assure you I take - took - my request to you for said copies very seriously and you can trust I still do. As Case No. 03-CV9416 was my pro se federal petition for relief of my wrongful Rape conviction of April 7th 1992 in the Circuit Court of Lake County ILL People v. Carini No. 91-CF-2233

It was with great disappointment that my federal petition No. 03 C 9416 had than been denied and denied unjustly, by error and as history will now record wrongfully denied than by Judge Conlon. As History now proves

(1)

My Lake County Cir Ct Rape conviction was knowingly wrongful, wherefore I was and am Actually Innocent.

Reason(s) for my untimely delay now some (6) months roughly, is I was also in process of proving my actual Innocence as you can reference thereby the inclosed July 19th 2016 Chgo Tribune front page article on me - my wrongful Lake County Rape conviction. that was some 5 months ago I dont have copies yet my self to inclose to you of the further actual Innocence proving process and current status. But I hope you had read or can (quickly internet access) obtain reference to follow-up front page article Chgo Tribune of my forth coming (now 25 years later) total DNA exoneration for crime - Rape - I did not comitt. Wherefore the Lake County States Attorney Mr Mike Nerheim - currently set for Jan 3rd 2017 will ask the Circuit Court Judge per 14 pages of DNA exoneration results to proving my being actually Innocent. Will seek - not contest my DNA exoneration and have my wrongful Rape conviction overturned. Its now just a formality of awaiting process to proceed Jan 3rd 2017

Sorry forgot to reference see Chgo Tribune Dec 26th 2016. I will be, since 2010, now # (7) wrongfully Lake county convicted - proven actually Innocent DNA evidence and other wise.

So Judge Conlon, having prior denied my

(2)

My federal petition long ago was — has — now been proven denied in error. And if you really knew facts of the case, although it finally took DNA evidence results to prove my being Actually Innocent. However long prior to DNA results, factually by Law and legal error(s) ~~Jule Conlon~~ Judge Conlon, even then was wrong on all accounts to have denied relief. I say this, as this wrongful Rape Case, was not just wrongful by mistake honest or otherwise mistake, no! it was that even a blind person can see wrongful conviction by knowing intent. In lay-terms I was knowingly framed for Rape I did not do. As I shall now proceed to also prove such, in my ~~forth~~ coming Civil Rights action for knowingly wrongful ~~prosecution~~ conviction etc and obtaining filing copies. This in part is why I had wrote you prior in ~~June~~ 2016, ~~your~~ for copies of and or record of all filings in my federal petition of No. 03 cv 9416, to which you responded. See enclosed copy June 24 2016, Request No. 0616-73. Now, I did that petition pro se, And I'm very seriously hard pressed to recall the total action consisting of total (6164 pages) — wow — and at Cost $333.00 I'm further hard pressed to be able, no where near able at this time to pay fee copy costs.

I also don't (and question why) understand why it skips from Doc # 3 to Doc # 11, what about Doc # 4 5 6 7 8 9 10 ?

(3)

Same for why it skips from Doc #13 to Doc #21 14 thru 20 ?

Although I would like to review all these filings for my civil action if I'm forced to proceed pro se If as I believe, obtain pro bono counsel, I'm sure they will obtain copies these filings court order or otherwise for civil rights action.

Saddly however due to additional - later unjustified conviction even after my exoneration I will for now remain within IDOC But, relief is also at hand in the Cook county unjustified cause of conviction

I had also requested copies on 3 other cases wherefore all (3) of those former defendants had also been wrongfully convicted in Lake county Circuit court and later proven actually innocent. In fact since 2010, (6) have been proven actually innocent And now I'm # (7) proven innocent after wrongfully convicted Lake county IL.

As those other 3 requested cases see your reply Inclosed 6-27-16, Request No. 0616-81

Many of the defendants in those civil rights actions are same party's persons - involved in also having me wrongfully convicted So I was interested in those claims - allegations raised against those defendants But, even at $80.50 fees is bit much for me So I'll do without, or have hopefully pro bono atty review those cases - filings Requested in No 0616-81 So Although I'm greatfull for your efforts

(4)

I'll withdrawal my request for No. 0616-81

However I stand firm in my request to obtain copy filings in Request No. 0616-73

In fact I would seriously argue fact of my wrongful conviction - now proven DNA - Actually Innocent whereby Judge Conlon, had in fact long ago denied proper relief to what was in fact an Actually Innocent - wrongfully convicted - Defendant - me wherefore I firmly believe due to these facts and outcome proven actually Innocent, current status 25 years imprisoned - indigent inmate, that the Clerk and of Court shall exercise its best judgement and seek to release and or order of Court to release the requested document copy(s) of filings in request # 0616-73

With all due Respect
very Sincerely
William Carini
William Carini
# N51235
Pontiac Corr Ctr Box 99
Pontiac IL 61764

(5)

# Chicago Tribune

QUESTIONS? CALL 1-800-TRIBUNE | TUESDAY, JULY 19, 2016 | BREAKING NEWS AT CHICAGOTRIBUNE.COM

## Illinois first lady plans rehab for 'people's house'

**Fixing up decayed Executive Mansion to cost $15 million**



**BLAIR KAMIN**
*Cityscapes*

SPRINGFIELD — The overgrown gardens around the Illinois governor's mansion are so thick with trees and bushes that you can hardly see the place when you drive by. That's not a bad thing. The mansion is the state's most embarrassing fixer-upper.

Bricks are crumbling. Balconies are sagging. And spindles are missing, leaving gaps in rooftop decoration like those in a bad set of teeth. The first section of the mansion was built in 1855, six years before the outbreak of the Civil War, and it is a mirror of the sorry state of the state. But Diana Rauner wants to change that.

Illinois' first lady unveiled an ambitious $15 million plan Monday for a major overhaul of the Springfield landmark. The overhaul promises to open views of the house to passers-by, clarify its aesthetically muddled exterior, and modernize its interior with a visitor orientation center, a mini-museum that showcases Illinois art, and a decent kitchen in the governor's

Turn to Kamin, Page 5



GOP presidential candidate Donald Trump introduces his wife, Melania, at the convention Monday night in Cleveland.
TIMOTHY A. CLARY/GETTY-AFP



At Pontiac Correctional Center, William Carini, 53, is serving a life sentence for two murder convictions.
JOSE M. OSORIO/CHICAGO TRIBUNE

### 'I didn't do the crime. So let's set the record straight.'

**Prisoner convicted of 2 murders and a rape seeks to clear his name — with his mother's legal assistance**

**BY TONY BRISCOE**
*Chicago Tribune*

When an officer arrived at the maximum-security Pontiac Correctional Center to collect a DNA sample from William Carini, he couldn't understand what the prisoner hoped to accomplish.

Carini had been pushing for years to have the evidence retested in his 1992 rape conviction in Lake County. Yet even if he is cleared of that crime, there's still the matter of the two people Carini was convicted of killing in north suburban Cook County — and the life sentence he is serving for that.

"You've already served the time for the rape. You're already doing life now," Carini recalled the officer saying as he took the DNA swab. "What's the point?"

Carini's remembers his terse response: "I didn't do the crime. So let's set the record straight."

Even by the standards of convicts trying to prove their innocence, Carini's unwavering quest to clear his name seems like the longest of judicial long shots. He's seeking not only to prove he did not rape a woman in her car along the Tri-State Tollway in 1991, but also that he did not murder his uncle and a young woman in a separate case years earlier — even though their bodies were discovered in a storage garage

Turn to Prisoner, Page 6

## REPUBLICAN NATIONAL CONVENTION

# GOP DIVISIONS SHOW AT START

### Trump, wife round out night of praise hours after brief rebellion on the floor

**BY MARK Z. BARABAK AND NOAH BIERMAN**
*Los Angeles Times*

CLEVELAND — Mixing put-downs with protest, Republicans opened their national convention Monday still working to reconcile themselves to the takeover of their party by business tycoon and reality TV star Donald Trump, who put his unmistakable stamp on the program.

Onstage in a hall bathed in red, white and blue, a parade of speakers sung Trump's virtues, portraying him as strong and decisive, canny and compassionate, unbeholden to Washington and selfless in a way the presumptive Democratic nominee, Hillary Clinton, is not.

Instead of "a woman who somehow feels that she's entitled to the presidency ... we can go for Donald Trump, a man doing this from the goodness of his heart (who) genuinely wants to help," said actor Scott Baio, one of a grab-bag of speakers that included Trump's wife, Melania, but few of the political stars who normally populate the convention stage.

Breaking with the usual protocol, which calls for him to absent himself until his Thursday night acceptance speech, Trump

Turn to GOP, Page 9

A delegate holds a sign trumpeting Donald Trump's signature message at the convention.
ANDREW GOMBERT/EPA

### MORE COVERAGE

**Republican leaders make plea for unity**
Message to delegates is clear: no matter feelings, Trump is better than Clinton, as party tries to kill doubts. **Page 9**

**John Kass:** Conventions are TV shows, and this year's drama comes from a lack of control. **Page 2**

**Rex W. Huppke:** Trump proving he is fear sprinkler, and America is his lawn. **Page 8**

**Kristen McQueary:** Ill. leaders miss chance to court delegates. **Perspective, Page 15**

---

### Baton Rouge shooter targeted officers in 'ambush,' officials say
Police release more details of gunman's plan of attack, background and interest in black separatism. **Page 11**

### France paused for moment of silence to mourn victims of attack
Large crowd in Nice also expressed anger, frustration during jeering of political leaders at memorial. **Page 11**

# Mom seeks to clear son's name in rape

**Prisoner,** from Page 1

that Carini had rented.

Yet authorities in Cook and Lake counties have agreed to take a fresh look at both convictions. Lake County officials have revealed exclusively to the Tribune that results of the newly completed forensic testing found no matches between Carini's DNA and the crime-scene evidence. Prosecutors are now considering how to proceed with the new information, including whether they will support a new trial for Carini, State's Attorney Mike Nerheim confirmed.

If Carini, now 53, is exonerated of the sexual assault, his would be the latest in a series of rape and murder cases in Lake County — prosecuted under Nerheim's predecessor, Michael Waller — that have been upended in recent years by DNA evidence. It would also mean that the rape of a northwest Indiana woman, who had fallen asleep in her car near Gurnee, is unsolved.

The particulars of Carini's situation only add to its improbability: His biggest advocate in his fight to prove his claim of innocence has been his 73-year-old mother — who herself was convicted of murder decades ago. And Carini had nearly exhausted his avenues for appeal when a chance meeting at a north suburban restaurant where his mother worked eventually led to Nerheim agreeing to re-examine the case.

## Mother's murder trial

Turmoil pervaded Bill Carini's life at an early age. At 10, he was called to testify at the murder trial of his mother, Ruthe Wille, who in 1971 shot and killed her husband, Joseph Carbona, Carini's stepfather, who was a Cook County sheriff's lieutenant, according to court documents and media accounts.

Wille, who then went by Carbona, had told authorities that her husband had drunkenly beat her the night before in their Mount Prospect home. When another argument turned violent the next morning, Wille said, the two struggled over his gun before it went off accidentally, though prosecutors at the time questioned how, in that scenario, one of the bullets ended up striking him in the back.

For Wille's young son, having to testify at his mother's trial "kind of damaged me psychologically, and I became fearful of authority," Carini said in a recent interview at Pontiac prison.

The prosecutor "twisted around my words trying to say 'I loved (my stepfather),'" Carini recalled. "How can you love someone who beats your mother unmercifully in front of your own eyes?"

Wille was convicted and would spend more than a decade in prison, during which time Carini lived with his ailing grandparents in their home outside Glenview. But both died shortly after Carini left high school, and in what would prove to be a fateful turn, his uncle John Kuba moved in.

At first, it wasn't clear that the disappearances of Kuba and another Carini acquaintance — childhood friend Joanne Seaquist, 19, of Vernon Hills — might be related. In fact, when Seaquist was reported missing in April 1983 after telling a family member that Carini was picking her up from work — prompting wide-scale searches with helicopters — there was no indication authorities were searching for Kuba too.

But months later, a foul odor led to the discovery of both bodies in the trunk of Kuba's 1968 Chevrolet Impala, parked inside a Northfield-area garage that Carini had rented. Autopsies showed Kuba had been shot seven times while Seaquist had been strangled with a necktie.

Carini, 20 at the time, was the immediate suspect.

Over the years, he has told different versions of how the bodies ended up in the car but asserts his involvement did not amount to first-degree murder. He initially said that he had been hanging out with Seaquist and his uncle when he felt asleep and was later awakened by gunshots and loud voices. He said he hid in a crawl space for an hour, and when he emerged, Kuba and Seaquist were gone. Carini claimed to have received several anonymous calls over the next two days directing him to "get rid of the Chevy," so he moved it to his rented garage.

At the time, authorities determined they didn't have the evidence to charge Carini with murder, but he was convicted of concealing Kuba's and Seaquist's homicides. During the 2 1/2 years Carini spent in prison, his mother was paroled.

## Back in handcuffs

When Carini too was released from prison in 1987, things seemed to be looking up. He got a job and started a relationship with a woman with whom he would have a son. They moved in with Wille and her third husband in Prospect Heights, hoping to save money to buy their own house.



Ruthe Wille holds a photo of herself and her son, William, from a visit while she was incarcerated in her husband's slaying.
KRISTEN NORMAN/FOR THE CHICAGO TRIBUNE

> "We're not going to quit until we prove him innocent."
> — Ruthe Wille, mother of prisoner William Carini

But Carini was soon back in handcuffs, this time accused of sexual assault.

The victim had been returning to her Indiana home from a family gathering in Milwaukee on June 3, 1991, when she grew tired and pulled onto the shoulder of I-94 near the Grand Avenue exit in Lake County. She fell asleep with the car doors unlocked and the windows rolled down, and woke up about 3 a.m. with a knife pressed against her throat. She fought back during the assault, biting her attacker and driving off after he tumbled out of the car, according to court records.

The woman had described her assailant as a white, clean-shaven man in his late 20s or early 30s, about 5 feet 7 inches tall with "dark fuzzy" hair and a quarter-inch scar above the right side of his lip.

From that description, authorities came up with a list of 100 possible suspects and focused on Carini in part because he lived somewhere near where the rape occurred, according to court documents. Lake County authorities also acknowledged that Carini raised suspicion because he had a criminal record and had served time for the concealment conviction.

Yet there were problems with their case. Though Carini's build roughly matched the victim's description, his scar is on the left side of his face. His stepfather, Lawrence Wille, testified that Carini had always worn a mustache.

And Carini's advocates would also later claim that, when the victim identified him as her attacker among an array of photos of possible suspects, she was misled by the fact that all the other men appeared to be Hispanic.

On appeal, Carini's lawyer also claimed an investigator improperly told the victim during the photo identification about Carini's criminal background.

Lawrence Wille also provided Carini's alibi. The stepfather testified that, on the night of the attack, he and Carini had watched movies from midnight to

Turn to **Prisoner,** Next Page

---

**Prisoner,** from Previous Page

about 3 a.m. at Wille's home in Prospect Heights, about 25 miles from where the rape occurred.

Also, prosecutors lacked forensic evidence, as a hair and two fingerprints found in the car were determined to match neither Carini nor the victim.

Despite it all, Lake County Judge Christopher Starck found Carini guilty of aggravated criminal sexual assault.

Carini claims authorities wrongly targeted him because of his past run-ins with the law.

"It's easier to investigate someone who already has a criminal history and try to pin other crimes on them that they've not done than actual find out the true suspect for it," he said. "That's a fact."

Starck later sentenced Carini to 20 years in prison.

It would not be the last of his legal troubles.

## Old murder mystery, resurrected

A few years into his rape sentence, in 1995, the mother of Carini's child contacted Lake County authorities from prison, where she was serving time for a burglary conviction, court records show. She said she wanted to share things her former boyfriend had said about the deaths, some 12 years earlier, of Kuba and Seaquist.

That tip would eventually lead to Carini being formally accused again in Kuba and Seaquist's deaths — only this time he was brought up on charges of first-degree murder.

At that trial, Carini's ex-girlfriend testified that he told her he killed Kuba because he "deserved to die," court records show.

In his own testimony — in a version of events different from the one told at his first trial — Carini said that his uncle was attacking Seaquist and that he intervened. He said he wrestled a gun away from Kuba and shot him several times but not in time to stop Kuba from strangling Seaquist.

During the prison interview with the Tribune, Carini did not elaborate further on what happened to Kuba and Seaquist. But he continued to assert that he killed Kuba in defense of Seaquist.

Cook County Circuit Judge Patrick Morse convicted Carini of the murders. Carini's mother said she begged the judge not to sentence her son to death, even though one of the victims was her own brother.

"I said ... 'He has a son. He has me. We're not going to quit until we prove him innocent,'" Ruthe Wille recalled.

A relative of Seaquist's, reached by the Tribune for this story, declined to comment about Carini's efforts to prove his innocence.

Carini was seeking to have his Lake County rape conviction overturned while he was fighting the murder charges.

In seeking years ago to win Carini a new trial in Lake County, one of his lawyers not only raised questions about the photo identification but submitted a sworn statement from the victim saying there was "definitely reasonable doubt" about whether Carini was her attacker.

The appeals lawyer also underscored his client's eagerness to have the fingerprint evidence retested, saying that Carini was "either ... an idiot, or



JOSE M. OSORIO/CHICAGO TRIBUNE
William Carini: "My mother's tenacity pointed out the facts and discrepancies ... that showed my innocence."

he's innocent."

But Starck in 2000 denied Carini's request for a new trial. The judge said he determined the woman only signed the statement because Carini's mother had "hunted, searched, tracked and frightened" her, and that she was scared of Wille after learning she had been convicted of murder, according to the Tribune's coverage at the time.

The sexual assault victim declined to comment when reached by the Tribune. Starck retired from the bench earlier this year.

## A mother's quest

Wille denies she pressured the woman into signing the statement. She does acknowledge that not everyone has been won over in her quest to prove her son's innocence, which she says has become the central purpose of her life.

A self-described "tough old broad," Wille said she has spent thousands of dollars over the years on attorneys for her son, but has sometimes ended up arguing with them and has fired at least two.

When she could no longer afford to pay attorneys' bills on her waitress earnings, Wille, then 70, enrolled in community college paralegal classes. She filed Freedom of Information Act requests, arranged to retrieve samples for DNA testing and tracked down the rape victim through the woman's parole officer.

"She's not an attorney but she's accomplished and done more than attorneys I've paid to work on my case," Carini said. "My mother's tenacity pointed out the facts and discrepancies ... that showed my innocence."

Sheer luck also contributed to her getting the attention of the Lake County state's attorney. That happened after she told her son's story to Lake County undersheriff and former Mundelein police Chief Ray Rose when he happened to dine at the Mundelein restaurant where she worked for many years. That led to a meeting with Nerheim, who agreed to put her case in front of his newly formed conviction review panel in 2013.

Nerheim initially agreed to examine the case after Wille told him the victim had recanted. When doubt was cast over that claim, Nerheim was ready to close the book on Carini's rape case, but Wille implored him to test the remaining evidence and even offered to pay for it.

Unbeknownst to Nerheim at the time, the evidence had been sitting in a box in Wille's closet for at least a decade, having been mistakenly mailed to her by a Baltimore forensics lab that has since shut down. Uneasy about turning it over to authorities for fear it would be destroyed, Wille shelved the box at her home.

Years later, she brought the materials to Nerheim's office, where she watched investigators inspect it for signs of tampering. Nerheim confirmed that the materials and their seals appeared to be intact and that he eventually agreed to authorize retesting.

With that testing now completed, and the results showing nothing that ties Carini to the crime, Lake County authorities are considering whether they will agree to a retrial. Nerheim stressed that a new trial is just one possible outcome, and that he is weighing the options after having met with his review panel about the case last week.

"It's important to keep an open mind," Nerheim said. "We never object to forensic testing when science changes. We understand she's a mother who's very motivated to help her son, as well."

Wille said she has drained her resources fighting to clear her son's name. She said she had to file bankruptcy and short-sell her house, and she has moved out of state.

Even if her son is cleared of rape, she knows she must still prove he didn't commit murder if he is to regain his freedom. But she said she must remain optimistic, as her own mother encouraged her to be during her own time in prison.

"My mom always told me, 'Don't let them take your smile,'" Wille said. "And that's why I don't give up on Bill."

*sbruscato@chicagotribune.com*
*Twitter @_tonybriscoe*



# UNITED STATES DISTRICT COURT
## United States Courthouse
## 219 South Dearborn Street
## Chicago, Illinois 60604

**Thomas G. Bruton**                                                                   **Office of the Clerk**

June 24, 2016

**Request No.**        **0616-73**

**In Re:**        **03cv9416**: Doc. #1 (25 pages); Doc. #2 (184 pages); Doc. # 3 (1 page); Doc. #11 (30 pages); Doc. #12 (**406 pages**); Doc. #13 (19 pages); Doc. #21 (1 page)

| Request Type | Price Per Item | Quantity | Sub Total |
|---|---|---|---|
| Photocopies (per page) | $.50 | 666 | $333.00 |
| Certification of Documents | $11.00 | | $0.00 |
| Exemplification of Documents | $21.00 | | $0.00 |
| Certificate of Good Standing | $18.00 | | $0.00 |
| Certificate of Admission | $18.00 | | $0.00 |
| Certificate of Search | $30.00 | | $0.00 |
| Certification of Judgment | $11.00 | | $0.00 |
| Retrieval of Case File/Docket Sheet – 1st box | $64.00 | | $0.00 |
| Retrieval of Case File/Docket Sheet – additional boxes | $39.00 | | $0.00 |
| *Federal Record Center* SmartScan – non certified copies, only. | $19.90 | | $0.00 |
| Per page fee        $0.65 | $0.65 | | |

The total cost of the service that you requested is    **$333.00**

Please make your remittance in the form of a check or money order. Indicate the request number shown above on the check or money order. **DO NOT SEND CASH.** For questions, please call the Certified Copy Desk at 312-435-5699.

Return this form with your check made payable to

    Clerk
    United States District Court
    219 South Dearborn Street
    Chicago, IL 60604

*[Handwritten: Still requested as stated within letter – see page (5)]*

Sincerely,
E. Wall
Deputy Clerk

Rev. 05/26/2016



**UNITED STATES DISTRICT COURT**
United States Courthouse
219 South Dearborn Street
Chicago, Illinois 60604

**Thomas G. Bruton**                                   Office of the Clerk

06/27/16

**Request No.    0616-81**

**In Re:**        12cv8665, 10cr7649, 09cv348

| Request Type | Price Per Item Requested | Quantity | Sub Total |
|---|---|---|---|
| Photocopies (per page) | $.50 | 161 | $80.50 |
| Certification of Documents | $11.00 | | $0.00 |
| Exemplification of Documents | $21.00 | | $0.00 |
| Apostille | $21.00 | | $0.00 |
| Certificate of Good Standing | $18.00 | | $0.00 |
| Certificate of Admission | $18.00 | | $0.00 |
| Certificate of Search | $30.00 | | $0.00 |
| Certification of Judgment | $11.00 | | $0.00 |
| Retrieval of Case File/Docket Sheet – 1st request | $64.00 | | $0.00 |
| Retrieval of Case File/Docket Sheet – additional request | $39.00 | | $0.00 |

**The total cost of the service that you requested is   $80.50**

Please make your remittance in the form of a personal check, cashier's check, or money order. Indicate the request number shown above on the check or money order. **Do not send cash.** For questions, please call the Certified Copy Desk at 312-435-5699.

Return this form with your check made payable to

Clerk
United States District Court
219 South Dearborn Street
Chicago, IL 60604

*Request Withdrawn*

Sincerely,
Roberto Cornejo
Deputy Clerk

Rev. 08/2015

William Carini
# N51235
Pontiac Corr Ctr
Box 99
Pontiac IL 61764



01/03/2017-41

2017 JAN -3 PM 2:16

United States District Court
United States Courthouse
Atten: Deputy clerk, E. Wall
219 South Dearborn St
Chicago IL 60604





Privileged
Legal

CORRESPONDENCE
FROM AN INMATE OF
ILLINOIS DEPT
OF CORRECTIONS

PC627
12.29.16
vM

